IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE:     ETHICON, INC.
           PELVIC REPAIR SYSTEM  PRODUCTS LIABILITY LITIGATION

                                                                MDL NO. 2327
_____

THIS DOCUMENT RELATES TO THE FOLLOWING CASE:

ROHYNNE PURDY,

                    Plaintiff,
v.                                                  CIVIL ACTION NO. 2:13-cv-19817

ETHICON, INC., et al.

                    Defendants.

**MEMORANDUM OPINION AND ORDER**
**(Motion to Dismiss Claims Brought by New Zealand Plaintiffs)**

Pending before the court is defendants Ethicon, Inc. and Johnson & Johnson, Inc.'s (collectively "Ethicon") motion to dismiss[1] New Zealand plaintiffs on *forum non conveniens* grounds. For the reasons stated below, Ethicon's motion to dismiss is **GRANTED** subject to the conditions set forth in this opinion.

**I.     Background**

These cases are several of over 40,000 assigned to me by the Judicial Panel on Multidistrict Litigation. The cases involve the use of transvaginal surgical mesh to treat pelvic organ prolapse and stress urinary incontinence. Out of these 40,000 cases, at least twenty were

---

[1] Ethicon filed an identical motion to dismiss in this and each of the cases filed by the New Zealand plaintiffs. Likewise, identical responses and replies were filed in the individual cases. This Memorandum Opinion and Order is entered in this and the other cases filed by the New Zealand plaintiffs.

filed by New Zealanders. According to their short form complaints, the plaintiffs were implanted with an Ethicon product in New Zealand. The plaintiffs appear to concede that they also received follow-up care in New Zealand. (*See* Pls.' Opp'n to Defs.' Mot. to Dismiss on Grounds of *Forum Non Conveniens*, at 11-13). On October 2, 2013, Ethicon moved to dismiss the New Zealand actions based on the *forum non conveniens* doctrine.

## II. Discussion

### A. *Forum Non Conveniens* Standard

*Forum non conveniens* is a discretionary doctrine that permits a district court to dismiss or transfer a case if the current forum is inconvenient. *See Nowsco Well Serv., Ltd. v. Home Ins. Co.*, 799 F. Supp. 602, 612-13 (S.D. W. Va. 1991) (Copenhaver, J.), *aff'd*, 974 F.2d 1331 (4th Cir. 1992). *Forum non conveniens* is a flexible inquiry. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981). The United States Supreme Court has refused to lay down rigid rules in this area. "Each case turns on its facts." *Id.* at 249. Absent a "clear abuse of discretion," a court's reasonable conclusions deserve "substantial deference." *See id.* at 257. The party seeking to dismiss based on *forum non conveniens* has "the burden of showing that an adequate alternative forum exists." *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 248 (4th Cir. 2011) (citing *Galustian v. Peter*, 591 F.3d 724, 731 (4th Cir. 2010); *Fid. Bank PLC v. N. Fox Shipping N.V.*, 242 Fed. App'x 84, 90 (4th Cir. 2007)). An alternative forum exists if it is "1) available; 2) adequate; and 3) more convenient in light of the public and private interests involved." *Id.*

To meet the availability requirement, the defendant must show that it is amenable to process in the foreign jurisdiction. *See Piper Aircraft*, 454 U.S. at 254 n.22 ("Ordinarily, [the availability] requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction."). "A foreign forum is adequate when (1) all parties can come within that

forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Tang*, 656 F.3d at 249 (internal quotation marks omitted). Generally, a change in the law that is unfavorable to the plaintiff is not dispositive. *Piper Aircraft*, 454 U.S. at 247. However, an unfavorable change in law is relevant "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all . . . ." *Id.* at 254. In other words, "[i]n rare circumstances[,] . . . where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied." *Id.* at 255 n.22.

If an alternative forum exists, a district court may proceed to the next step—weighing the public and private interests in the case. A district court must weigh these factors in light of the appropriate deference due to the plaintiff's forum choice. *See id.* at 255. Usually, when a domestic plaintiff selects the United States as her forum, a court gives substantial deference to that choice. *Id*. It is assumed that a plaintiff's home forum is convenient to the plaintiff. *Id.* at 255-56. "When the plaintiff is foreign, however, this assumption is much less reasonable." *Id.* at 256. Therefore, when a foreign plaintiff selects a United States court as her forum, this presumption applies "with less force." *Id.* at 255.

### B. Analysis

#### i. Availability of the Alternative Forum

A foreign forum is available if the defendant is amenable to process in that forum. *See id.* at 254 n.22. In its briefing, Ethicon asserts that it is "established and regulated under the laws of New Zealand [and] can be served with New Zealand process." (Br. in Supp. of Defs.' Mot. to Dismiss Claims Brought by New Zealand Pls., at 3). Moreover, Ethicon states that it will not

3

dispute that it is subject to New Zealand's jurisdiction. (*See id.* at 4). The plaintiffs do not address whether New Zealand is an available forum.

The availability requirement is usually satisfied if the defendant stipulates that it is amenable to service of process in the foreign jurisdiction. *See Tang*, 656 F.3d at 249. Here, Ethicon has conceded in its briefing that it would not dispute the jurisdiction of New Zealand courts. While Ethicon has not provided a written stipulation or affidavit on this issue, other courts have found that on-record concessions are sufficient to satisfy this requirement. *See, e.g.*, *Miller v. Boston Scientific Corp.*, 380 F. Supp. 2d 443, 448-50 (D.N.J. 2005) (finding defendant's concession in briefing that "it has a presence in Israel [and] is subject to the jurisdiction of the Israeli courts," coupled with the court's power to condition dismissal upon defendant's agreement to submit to process, was sufficient in establishing the existence of an alternative forum). To provide further assurance that Ethicon is amenable to process, I will condition dismissal upon its agreement to submit to process in New Zealand. Accordingly, I **FIND** that New Zealand is an available alternative forum, provided Ethicon submits to process in New Zealand.

### ii. Adequacy of the Alternative Forum

An alternative forum is adequate if "1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Tang*, 656 F.3d at 249 (internal quotation marks omitted). As previously noted, Ethicon has stated that it will submit to the jurisdiction of New Zealand courts. However, the parties disagree whether New Zealand's Accident Compensation Act, a no fault-based compensation scheme, is an adequate remedy.

4

1. The Accident Compensation Act

In 1972, the New Zealand legislature passed the Accident Compensation Act. *See* Rosemary Tobin & Elsabe Shoeman, *The New Zealand Accident Compensation Scheme: The Statutory Bar and the Conflict of Laws*, 59 Am. J. Comp. L. 493, 494 (2005). Under the Act, an individual can obtain damages for covered injuries. *Id.* at 497-98. The covered injuries fall into several categories, such as treatment injury, gradual processes, disease or infection, and, under limited circumstances, mental injury. (*See* Ex. 2, Decl. of Audrey Rosemary Tobin, Br. in Supp. of Defs.' Mot. to Dismiss Claims Brought by New Zealand Pls. ("Tobin Decl."), ¶¶ 27-36). The term "treatment" includes "the failure of any equipment, device, or tool used as part of the treatment process, including the failure of any implant or prosthesis . . . ." Accident Compensation Act 2001, cl 33(1)(6) (N.Z.).

To obtain coverage for treatment injury, an individual must prove "a causal link between the injury and the treatment on the balance of the probabilities." (Tobin Decl., ¶ 32). Thus, a plaintiff can obtain damages without having to prove the liability of the person who injured them. *See id*. In exchange for these benefits, New Zealanders entered a "social contract" and relinquished their right to sue for compensatory damages in New Zealand courts. Ian B. Campbell, *Compensation for Personal Injury in New Zealand* 74 (1967). However, under the Act, an individual can still sue for exemplary damages. Accident Compensation Act 2001 cl 319 (N.Z.).

2. The Accident Compensation Act Provides an Adequate Remedy

The plaintiffs argue the Act does not provide an adequate remedy because it does not allow them to litigate their claims in court. Put differently, plaintiffs contend that a remedy is

5

adequate only if it is a *judicial* remedy, rather an *administrative* one.[2] Ethicon argues that *Piper* only requires the alternative forum to provide *some* remedy. The origin of that remedy, Ethicon contends, is irrelevant to the *forum non conveniens* analysis. In support, Ethicon cites *Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2000). In *Lueck*, New Zealand citizens were injured in an airplane crash in New Zealand. *Id.* at 1141. The plaintiffs brought suit against the Canadian manufacturer of the plane and the American manufacturer of the plane's Ground Proximity Warning System in a United States court. *Id.* In affirming the district court's dismissal of the action on *forum non conveniens* grounds, the Ninth Circuit Court of Appeals stated that:

> The district court was not required to ask whether plaintiffs could bring this lawsuit in New Zealand, but rather, whether New Zealand offers a remedy for their losses. . . . The effect of *Piper Aircraft* is that a foreign forum will be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong. A New Zealand remedy is unquestionably available here. According to the complaint, the losses for which Plaintiffs seek compensation are their physical injuries sustained in the accident and the resulting loss of earnings. Plaintiffs do not dispute that they can file and have filed claims with the ACC for these losses; nor do they dispute that they have received compensation from the ACC for those losses. Although New Zealand law does not permit Plaintiffs to maintain this exact suit, New Zealand, through its no-fault accident compensation scheme, has provided and continues to provide a remedy for Plaintiffs' losses. Plaintiffs have not shown that this type of administrative remedy is so inadequate that it is tantamount to no remedy at all. The *forum non conveniens* analysis does not look to the precise source of the plaintiff's remedy, so we will not require the alternative forum to offer a judicial remedy.

*Id.* at 1144-45 (footnote omitted).

The Fourth Circuit also has indicated that an adequate remedy may be administrative in nature. In *Jiali Tang v. Synutra International*, 656 F.3d 242, 246 (4th Cir. 2011), Chinese

---

[2] In support of their position, the plaintiffs cite *NHL Players' Ass'n v. Plymouth Whalers Hockey Club*, 166 F. Supp. 2d 1155, 1161 (E.D. Mich. 2001). *Nat'l Players' Ass'n* is inapposite to this case. Unlike the instant action, the plaintiff in *Nat'l Players' Ass'n* had only sought injunctive relief, which was not available to a private litigant and unlikely to be enforced by Canada's Attorney General. *Id.* at 1164. In addition, the plaintiff did not and could not establish its entitlement to damages. *Id.* Effectively, the plaintiff had no remedy at all. Here, the plaintiffs do have access to a remedy in New Zealand. As Professor Audrey Rosemary Tobin concludes in her declaration, the plaintiffs' injuries qualify as a "treatment injury." (Tobin Decl., ¶¶ 72-73). Thus, if they can establish causation, the plaintiffs can obtain the benefits that are available under the Accident Compensation Act. (*See id.* ¶ 75.).

consumers brought an action against a United States corporation for injuries related to contaminated infant formula. The district court found that China provided an adequate remedy because the Chinese government had set up a fund to compensate children and their families who had been injured by contaminated infant formula. *Id.* at 248. The Fourth Circuit affirmed the district court's conclusion. *Id.* at 251. Citing *Lueck* approvingly, the Fourth Circuit stated that

> [T]he *forum non conveniens* doctrine does not limit adequate alternative remedies to judicial ones. Indeed, the reach of the doctrine extends to nonjudicial alternative remedies such as the Fund which was established to specifically redress the grievances of contaminated formula victims. Additionally, the Fund is not an inadequate remedy merely because Plaintiffs "may not enjoy the same benefits as they might receive in an American court." Significantly, Plaintiffs do not argue that compensation from the Fund "is so clearly inadequate or unsatisfactory, that it is no remedy at all . . . ."

*Id.* at 250-51 (internal citations omitted).

Like *Tang*, the plaintiffs are not arguing that they have no remedy at all; instead, they are dissatisfied with the remedies available in New Zealand. *Piper Aircraft* establishes a low threshold for establishing the adequacy of a remedy. The defendant need only show that there is some remedy available, even if the remedy is less favorable than one available in the United States. *See Piper Aircraft*, 454 U.S. at 255 n.22. Here, the legal experts proffered by the parties all agree that the New Zealand plaintiffs qualify for cover under the Accident Compensation Act. Therefore, the plaintiffs are entitled to a variety of remedies, which they can obtain without the additional burden of proving fault. While they may not be able to litigate the subject matter of the dispute, they still can obtain a *remedy*. Moreover, the plaintiffs can file suit in New Zealand for exemplary damages, thus undercutting the plaintiffs' argument that they are completely barred from New Zealand's judicial system.

Finally, other courts, in addition to the Ninth Circuit in *Lueck*, have found that the Accident Compensation System is an adequate remedy. *See, e.g.*, *In re Silicone Gel Breast*

7

*Implants Prods. Liab. Litig.*, 887 F. Supp. 1469, 1475 (N.D. Ala. 1995) (finding Accident Compensation Act provided an adequate remedy for plaintiffs suing for injuries related to breast implants and noting that "[r]elegation of a claimant to an administrative forum for compensation [does] not, in and of itself, preclude dismissal based on *forum non conveniens*"); *Stonnell v. Int'l Harvester Co.*, 478 N.E.2d 518 (Ill. App. Ct. 1985) (finding Accident Compensation provided an adequate remedy to plaintiffs suing for a wrongful death related to defective tractor because plaintiffs could receive compensation under the Accident Compensation Act). Accordingly, I **FIND** that New Zealand is an adequate alternative forum.[3]

### iii. Convenience of the Alternative Forum

Because I have found that an alternative forum exists, I now must determine whether the balance of the private and public factors tips the scales in favor of dismissal. Before I conduct this analysis, I note again that the usual deference given to a plaintiff's forum choice applies with "less force" when a foreign plaintiff selects a United States court as her forum.

### 1. Private Factors

In considering the private interests of the litigants, I must consider the following factors:

> [1] relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; [3] possibility of view of premises, if view would be appropriate to the action; and [4] all other practical problems that make trial of a case easy, expeditious and inexpensive.

---

[3] The plaintiffs also argue New Zealand is an inadequate forum because it does not allow for loss of consortium. As other courts have found, the inability to pursue a loss of consortium claim in the alternative forum does not make it inadequate. *See, e.g.*, *Massaquoi v. Virgin Atl. Airways*, 945 F. Supp. 58, 61 (S.D.N.Y. 1996) ("English law may be less favorable to plaintiffs than American law because it does not recognize loss of consortium claims; however, this does not render England's remedy 'clearly unsatisfactory.'"); *In re Vioxx Litig.*, 928 A.2d 935, 941 (App. Div. 2007) ("[W]e are aware of no precedent holding that jurisdiction must be maintained in an inconvenient forum simply because loss of consortium claims would not be recognized by the alternative court. Rather, in such circumstances, dismissal has been found to be warranted. . . . We deem it unreasonable to accord dispositive weight in a *forum non conveniens* analysis to such a derivative cause of action, regardless of the loss of a damages remedy. Such tail-wagging cannot overcome the well-established principles governing forum determination in this context.").

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

> **a. Relative Ease of Access and Ability to Obtain Attendance of Willing Witnesses and Availability of Complusory Process**

Because the short form complaint alleges implantation of the device in New Zealand, Ethicon argues that I can presume the plaintiffs received medical treatment in New Zealand. Therefore, Ethicon contends that a majority of evidence related to causation, injury, and damages must be located in New Zealand. As a result, Ethicon claims it would "face significant time and expense traveling longer distances to collect" a majority of the evidence in this case. (Br. in Supp. of Defs.' Mot. to Dismiss Claims Brought by New Zealand Pls., at 11). The plaintiffs claim that Ethicon would have little difficulty in obtaining evidence from willing witnesses.

In a products liability action, where a majority of the evidence related to causation, injury, and damages is located in the alternative forum, courts generally find this fact weighs in favor of dismissal. *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 479 (2d Cir. 2002) (affirming dismissal where "Plaintiffs sustained their injuries in Ecuador and Peru, and their relevant medical and property records are located there"); *De Melo v. Lederle Labs.*, 801 F.2d 1058, 1062-63 (8th Cir. 1986) (affirming dismissal where evidence of plaintiff's medical history, "necessary regardless of the theory of recovery," was located in Brazil); *Doe v. Hyland Therapeutics Div.*, 807 F. Supp. 1117, 1125 (S.D.N.Y. 1992) (granting dismissal where bulk of evidence essential to establishing causation, product identification, harm, and damages was located in foreign forum); *Ledingham v. Parke–Davis*, 628 F. Supp. 1447, 1450 (E.D.N.Y. 1986) (granting dismissal where "the vast majority of evidence relating to the causation and damages elements of plaintiff's claims" was located abroad).

Here, the record indicates that the female plaintiffs were implanted with the product in New Zealand. Moreover, the plaintiffs appear to concede that they received medical treatment for

9

injuries in New Zealand. (*See* Br. in Opp'n to Defs.' Mot. to Dismiss Claims Brought by New Zealand Pls., at 13). Although I lack additional evidence on the plaintiffs' medical treatment history, I find it reasonable to infer that evidence related to causation, injury, and damages are located in New Zealand. Although evidence related to the plaintiffs' claims are located in New Zealand and the United States, on balance, Ethicon will face a greater burden in accessing evidence if a trial proceeds in the plaintiffs' forum of choice.

Although New Zealand is not a party to the Hague Convention, the Evidence Act of 2006 provides a procedure for obtaining evidence. (Ex. 1, Decl. of David John Goddard, Br. in Opp'n to Defs. Mot. to Dismiss New Zealand Pls. ("Goddard Decl."), ¶¶ 75-79). This act is consistent with the Hague Convention. *See id.* There is no indication from the record that the Evidence Act of 2006 can compel an unwilling witness to testify in a foreign country. *See id.* If Ethicon used this procedure, it appears that most of the testimony would have to be presented via videotaped depositions. *See id.* As the United States Supreme Court has observed, "to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." *Gulf Oil Corp.*, 330 U.S. at 511.

However, if a trial were held in New Zealand, a New Zealand court might also have difficulty obtaining the presence of unwilling witnesses located in the United States. Nevertheless, considering the evidence and witnesses this court anticipates are located in New Zealand, and the preference for live testimony, I find this factor weighs slightly in favor of New Zealand as the more convenient forum.

### 2. Public Factors

The public factors I must consider are the following:

> [1] the administrative difficulties flowing from court congestion; [2] the local interest in having localized controversies decided at home; [3] the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; [4] the avoidance of unnecessary problems in conflict

10

of laws, or in the application of foreign law; [5] and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Gulf Oil Corp*, 330 U.S. at 508 (internal quotations omitted).

### a. Local Interest in Having Localized Controversies Decided at Home

Ethicon argues New Zealand has a strong interest in regulating mesh products marketed and sold in New Zealand because these products are regulated by New Zealand's regulatory and statutory regime. The plaintiffs argue the United States has a significant interest in regulating United States corporations that design, manufacture, and distribute defective products globally.

First, numerous American plaintiffs have brought actions against Ethicon in this MDL. This voluminous litigation is more than sufficient to protect the American interests contemplated by the plaintiffs. *See In re Vioxx*, MDL 1657, 2009 U.S. Dist. LEXIS 55973, at *25 (E.D. La. Feb. 11, 2009); *see also In re Fosamax Prods. Liab. Litig.*, MDL 1789, 2009 WL 3398930, at *5 (S.D.N.Y. Oct. 21, 2009) ("The presence of other similar actions further reduces the United States' interest in this particular matter as they 'ensure[ ] that appropriate standards of care are applied,' and if the Defendants are found liable, then they and others will be deterred from engaging in similarly inappropriate conduct in the future.") (citing *In re Rezulin Prod. Liab. Litig.*, 214 F. Supp. 2d 396, 399 (S.D.N.Y.2002)).

Second, many courts recognize that the forum that regulates the product has a strong interest in the resolution of an action involving the product. *See, e.g.*, *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003) ("If accepted, plaintiffs' argument would curtail the rights of foreign governments to regulate their internal economies and threaten to engulf American courts with foreign claims."); *Kryvicky v. Scandinavian Airlines Sys.*, 807 F.2d 514, 517 (6th Cir. 1986) ("[T]his court has held that the country where the injury occurred

11

has a greater interest in the ensuing products liability litigation than the country where the product was manufactured."); *In re Fosamax Prods. Liab. Litig.*, MDL 1789, 2009 WL 3398930, at*4 (S.D.N.Y. Oct. 21, 2009) ("[T]he foreign country in which the product was sold and ingested has the foremost interest in defining the standard of conduct which pharmaceutical companies must follow in distributing products under its regulatory scheme."); *Doe v. Hyland Therapeutics Div.*, 807 F. Supp. 1117, 1129 (S.D.N.Y. 1992); *Ledingham v. Parke–Davis Div. of Warner Lambert Co.*, 628 F. Supp. 1447, 1451 (E.D.N.Y. 1986) ("[W]hen a regulated industry, such as the pharmaceutical industry, is involved in an action, the country where the injury occurs has a particularly strong interest in the litigation."); *Harrison v. Wyeth Labs. Div. of Am. Home Products Corp.*, 510 F. Supp. 1, 4 (E.D. Pa. 1980), *aff'd sub nom. Harrison v. Wyeth Labs., a Div. of Am. Home Products Corp.*, 676 F.2d 685, 685 (3d Cir. 1982) ("Questions as to the safety of drugs marketed in a foreign country are properly the concern of that country; the courts of the United States are ill-equipped to set a standard of product safety for drugs sold in other countries.").

Here, the Medicines Act of 1981 regulates Ethicon's mesh implants, which were distributed to plaintiffs in New Zealand. (*See* Ex. 2, Decl. of Rebekah Jane Brown, Br. in Supp. of Defs.' Mot. to Dismiss Claims Brought by New Zealand Pls. ("Brown Decl."), ¶¶ 28-40). Therefore, New Zealand likely has a strong interest in controlling the interpretation of its regulatory standards for medical devices. Accordingly, I **FIND** that New Zealand has a strong interest in this litigation.

      **b. Choice of Law, Avoiding Application of Foreign Law, the Unfairness of Burdening Citizens in an Unrelated Forum With Jury Duty**

In deciding a motion to dismiss based on *forum non conveniens*, I need not conduct a lengthy choice of law analysis. *See Corporacion Tim v. Schumacher*, 418 F. Supp. 2d 529, 533 (S.D.N.Y. 2006) ("[T]he Court need not ultimately decide the conflict of laws issue for purposes of this decision [regarding *forum non conveniens*] . . . ."); *Varnelo v. Eastwind Transp.*, No. 02–2084, 2003 WL 230741, at *27 (S.D.N.Y. Feb.3, 2003) ("[I]t is well established that a court considering a *forum non conveniens* motion should not engage in a complex conflict of laws inquiry . . . ."). The likelihood that foreign law may apply "weighs heavily in favor of dismissal." *In re Vioxx*, MDL 1657, 2009 U.S. Dist. LEXIS 55973, at *30 n.4 (E.D. La. Feb. 11, 2009); *see also Ledingham v. Parke-Davis Div. of Warner-Lambert Co.*, 628 F. Supp. 1447, 1452 (E.D.N.Y. 1986) ("This Court's unfamiliarity with Canadian law supports dismissal of the action on the basis of *forum non conveniens*.").

As these cases were directly filed, the choice of law that applies is the place where the plaintiff was implanted with the product. *Sanchez v. Boston Scientific Corp.*, No. 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014). Here, the plaintiff was implanted in New Zealand and thus New Zealand choice of law rules would likely apply. Having to apply a foreign country's choice of law rules in itself suggests dismissal is appropriate. Finally, it would be unfair to burden American citizens with jury duty related to an action that involves New Zealand citizens who were injured in New Zealand.

### c. Administrative Difficulties Flowing from Court Congestion

"Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin." *Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1947). This court is managing pre-trial matters for over 40,000 transvaginal cases involving products from several different manufacturers. Although multidistrict litigation involves some congestion,

retaining jurisdiction over foreign actions would further exacerbate the administrative difficulties this court is facing. *In re Vioxx*, MDL 1657, 2009 U.S. Dist. LEXIS 55973, at *20 (E.D. La. Feb. 11, 2009); *In re Fosamax Prods. Liab. Litig.*, MDL 1789, 2009 WL 3398930, at *6 (S.D.N.Y. Oct. 21, 2009). Accordingly, I **FIND** the public interest factors weigh in favor of dismissal. Because the balance of the private and public factors indicates dismissal is appropriate, I **GRANT** Ethicon's motion to dismiss subject to the conditions set forth below.

### III.  Conclusion

For the reasons stated below, Ethicon's motion to dismiss [Docket 4] is **GRANTED** provided that:

    A. Ethicon submits to service of process and jurisdiction in New Zealand with respect to this action.

    B. Ethicon will not, in raising any statute of limitations or similar defense in New Zealand, include the period that a suit, not barred by a statute of limitations in this country, was pending against it in a court of the United States.[4]

---

[4] *In re Vioxx*, 2009 U.S. Dist. LEXIS 55973, at *41.

It is **ORDERED** that Ethicon advise this court of its consent to the above conditions within fourteen days of the date of this Order. This court will dismiss this action as to Ethicon, Inc. and Johnson & Johnson, Inc.[5] only upon timely receipt of Ethicon's written stipulation.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

        ENTER:  February 14, 2014

        _____
        JOSEPH R. GOODWIN
        UNITED STATES DISTRICT JUDGE

---

[5] Ethicon, LLC has been named in this action as well. In MDL 2327, *In re Ethicon, Inc., Pelvic Repair System Products Liability Litigation*, the plaintiffs moved to amend the Master Complaint to dismiss Ethicon, LLC [Docket 886], and defendants have responded that they do not object [Docket 918]. Accordingly, although Ethicon, LLC has not yet been dismissed from the Master Complaint, it will be and, as a result, upon filing of Ethicon's notice of consent, Ethicon, LLC will be dismissed from this action.